[No. 149. Decided July 20, 1891.]

## AMERICAN BUILDING AND LOAN ASSOCIATION v. ALBERT D. HART AND FRANK C. FAXON.

PRINCIPAL AND AGENT — VIOLATION OF CONTRACT — DAMAGES — EVIDENCE — REFRESHING MEMORY — ADMISSIONS.

In an action for breach of a contract whereby plaintiffs were appointed general agents of the defendant building association with sole authority to solicit members and collect admission fees in certain territory, plaintiffs will be entitled merely to nominal damages, where the only material showing at the trial was that sales had been made by other parties in plaintiffs' territory without their knowledge or consent, and there was no proof of the number of shares sold nor of the actual damage resulting therefrom to plaintiffs.

A party testifying as a witness cannot refresh his memory of the number of shares of stock sold by referring to a written list copied by him from an extract of the record made by an under clerk of the building association; nor is the admission of the president of the association, to whom the original had been shown, that "it was cor-

rect in the total," competent evidence, when the paper shows no total.

*Appeal from Superior Court, King County.*

The facts are sufficiently stated in the opinion.

*Preston, Carr & Preston,* and *W. S. Bush,* for appellants.

*John H. Elder, Sidney M. Logan,* and *J. K. Brown,* for appellees.

The opinion of the court was delivered by

STILES, J.—Appellees sued for damages for the violation of a contract dated October 1, 1888, and containing the following provisions:

"*First.* The party of the first part agrees to appoint, and does hereby appoint, said parties of the second part general agents for the said first party for the following territory, to wit: The territory of Washington, with exclusive control of the same: *Provided,* That Messrs. Hurd, Beck, & Baker shall be allowed to organize local boards in Ellensburgh and North Yakima, and to work in Seattle until October 13, 1888. Said parties of the second part are given authority to solicit members and collect admission fees, organize local boards, and appoint sub-agents in such territory, such agency to terminate upon the termination of this contract."

"*Third.* That said first party agrees to allow said second party, as compensation for such services, one hundred per cent. of the admission fee collected by them on all applications secured by them; also a renewal interest of two cents per share per month on all business done in Washington Territory by themselves or others, except that done by Messrs. Hurd, Beck & Baker in the towns excepted above; also admission fees remitted to the home office of sub-agents of second parties: *Provided,* That on paid-up stock second parties shall be allowed two dollars per share at the time of sale, and fifteen cents per year thereafter."

The breach alleged was that the appellant association, after the making of the agreement, and after October 13,

1888, permitted Messrs. Hurd, Beck & Baker, as its agents, to organize local boards of the association, and appoint local agents thereof, in the State of Washington, and that against the protest of the appellees, and with the knowledge and consent of the association; and that as its agents they "did wrongfully solicit members of said association to the number of about 194, and did solicit, take and receive from said members, for the sale of stock of the defendant association, and for admission fees therein, the sum of $3,035." The complaint also contained a claim for damages for injured credit, which was abandoned; and a further claim for "renewals" amounting to $485.60, which seems to have been also lost sight of, if not altogether abandoned. The answer admitted the contract, but claimed the actual date of its execution to have been October 13th instead of October 1st. It denied the breach alleged, but set up affirmatively that Hurd, Beck & Baker, under an agreement between them and the appellees, had subsequently to October 13th sold 3,000 shares of stock in Washington.

At the trial a multitude of issues were assumed to be in the case, but we can find but two that were left open by the pleadings, viz.: (1) Were the sales of 3,000 shares of stock by Hurd, Beck & Baker made under any agreement with Hart & Co. (2) If not, then there having been a breach of the contract, what was the damage to the appellees by reason of the breach? It must be borne in mind that the complaint alleged that stock was sold, without mentioning any number of shares, but also stated that the association had received from the sale of stock and for admission fees $3,035; while the answer admitted the sale of 3,000 shares but denied the receipt of any sum for stock or admission fees. The fact was that Hurd, Beck & Baker had had the same kind of a contract with the association as that given to Hart & Co., and they retained whatever they collected for their own account, claiming to act under a

special arrangement with Hart & Co., which extended or continued the right to represent the association on the old terms.

This state of the pleadings left it incumbent upon the appellees to prove to the satisfaction of the jury that shares were sold, whether 3,000 or any other number, in violation of their contract, and, within some reasonable degree of certainty, the actual damage to them resulting therefrom. Definite mathematical certainty would be nearly impossible in such a case, but, to recover more than nominal damages, there must be something like a basis for the jury to estimate from. They cannot be left to a mere guess. At the trial, however, the plaintiffs' case produced nothing material beyond a showing that the stock sales complained of were made without their knowledge or consent. It might have been expected, from the indefiniteness of the complaint and the contract, that some testimony would have been adduced showing what kind of a business this was that the association was conducting, and generally the method of disposing of its stock, for which the appellees engaged their time and labor; also what an "admission fee" was, of which they were to receive one hundred per cent.; and what was meant by a "renewal interest." But nothing of the kind was attempted even. One of the plaintiffs, while a witness, presumably for the purpose of showing that more than 3,000 shares had been sold, produced a paper which he claimed to have obtained from records in the association's office, containing what may be called a "description list" of certificates of shares issued to divers persons, and was asked this question:

"What is the total of that—the number of shares of stock they sold?"

To which he answered, in no way responsively:

"Well, the total amount of admission fees was $3,035. Sold in lots under ten shares, the admission fee was more

than one dollar, and the amount of admission fees, total of $3,035, would be a trifle less than the number of shares — total number involved."

Now, it might be, perhaps, inferred from this irrespon-sive answer, which was the only remark on the subject in the whole case, that an ordinary admission fee was one dollar, but that in lots of less than ten shares the fee was more than one dollar. But was the fee per member or per share? From the rest of the answer we might infer it to be per share were it not for the complaint, which says that $3,035 was received for "stock" and "admission fees." How much, then, was for stock, in which appellees had no interest, and how much for fees, of which they were entitled to one hundred per cent.? But these are mere guesses of our own, which a jury has no right to make, or to be required to find a verdict from. But on the point of actual damage there was no testimony at all. Plaintiffs seemed to proceed upon the theory that, having shown that Hurd, Beck & Baker had received $3,035 from these sales, that would be the measure of their recovery against the association, as though the suit were for money had and received, forgetting that the action was for breach of the contract. The jury apparently saw the point of the dilemma, for they awarded but $1,500, though as a deduction from what facts in the case we are unable to discover. The court should have charged the jury that, under the evidence, if they found the sales of stock made by Hurd, Beck & Baker, subsequent to October 13, 1888, to have been made without the knowledge or assent of Hart & Co., they should find for the plaintiffs, and assess nominal damages ; but otherwise they should find for the defendant. Not having so charged, the judgment must be reversed and a new trial had. The motion for a nonsuit was properly denied, as the plaintiffs' showing was that the sales had been without their knowledge or consent, and against their protest.

Upon the new trial, in order to recover more than nominal damages, the plaintiffs should show that, if whatever shares of stock were sold in violation of their contract had not been so sold, they would have reaped some advantage therefrom, and approximately what that advantage would have been in money. It will not do to say that because Hurd, Beck & Baker sold, say 3,000 shares, therefore Hart & Co. would have sold the same shares; nor will it be correct to consider admission fees as net profit, without considering the outlay connected with collecting them. These points must be made as certain as experience in the business and the nature of the case will permit before a jury will be warranted in finding a verdict.

The so-called "subscribers' list," from which the witness Hart was allowed to refresh his memory, was not competent either as a "refresher" or as evidence. Plaintiffs had the admission that 3,000 shares were sold after October 13, and there was nothing about this list to show that any share represented upon it was sold after that date in addition to the 3,000 admitted. Moreover, it was a mere extract of book memoranda made by an under clerk at the office of the association, for what purpose does not appear, and could be taken as no admission of the corporation. No, it was not even that; but only what purported to be a copy of such an extract, made by the witness from the original, which was on file with some referee. The witness had shown the original to the president of the association, and asked him if it was correct; to which he replied that he "didn't know specifically about each particular name, but it was correct in the total." But the paper shows no total. There was no materiality in either of the letters offered, under the view we take of the case, though appellant cannot complain of that of April 29, 1889, since the record shows it to have been introduced by that side. We think it not necessary to review the court's instructions, as the

proper scope of instruction on the new trial has already been indicated.

ANDERS, C. J., and DUNBAR, J., concur.

HOYT and SCOTT, JJ., not sitting.